Good morning, Your Honor. Gerson Simon for the appellate. I must admit, Your Honor, that this case should be decided according to the principles enunciated in the recent K. Collins case. In that particular case, the court dealt with the issue of the propriety of the prosecutor striking a witness because of her youth. This particular issue is before the court in this case. One of the jurors was struck because he was apparently young, too young, and another witness was struck because he seemed to be too old. So with respect to the young witness, rather the young prospect of juror, if we look at the Well, also, the employment, another reason for the young chap was that they felt his employment wasn't too hot, too documented. Yes, Your Honor. If you briefly make a comparative analysis of this particular juror, prospective juror who was found wanting because he couldn't substantiate or didn't substantiate his employment, you will see that none of the prospective jurors validated or substantiated their employment. A whole series of jurors responded to several questions that were listed on the wall, employment, wife's employment, whether you were a victim or a witness to a crime. And they just gave general responses. One was an engineer, an office manager. None of them were asked, who do you work for? None of them were asked, what was your salary? So the question is, and I would submit that the prosecutor had the opportunity to ask this younger prospective juror where he worked. Well, the other ones that were engineers and so forth, but more, I don't want to call it well-recognized professions or callings, you know. This was recreational. It sounded sort of like a part-time thing that people do at a young age, but not. It doesn't sound like a career type of tracked employment. Let's put it that way. Yes, Your Honor. It's easy to speculate that he didn't have a solid job in the community, but why didn't they question him about the matter? I mean, they could have dug up additional information, but they didn't. And so as a result, they felt that he perhaps didn't have strong ties to the community and that he was young and the same general age group. Well, let me ask you one thing. I've been away from it for a long, long time. But in the Superior Court, when you're picking a jury in a case, don't they give you a little, don't you have a sheet of paper that has the names of the people and their age and what their occupation is and you get something like that? Well, Your Honor, I've tried several cases, many cases in the District of Columbia. You're correct with respect to the various background information that is given the lawyers with respect to the prospect of jurors. But I don't know if it was done in this particular case. So that is one of the reasons you make a definite definitive comparative analysis of what of how the jurors were selected. But what's wrong with striking someone that's young and doesn't have his career roots down? Someone that's well-developed in the community. You know, I like substantial people that weigh my cases. And I want someone that's got roots down and firmly implanted in a job and that has some wide breadth of human experience. That's the guys I want on my jury. Yes, Your Honor. What's wrong with that? Nothing, Your Honor. Well, so why is this a, so what's wrong with challenging someone for that reason? Because that general reason why you should want somebody with more solid ties to the community is a good reason to want that person on the jury and to strike others who may not appear to be similarly situated. But then what we're doing is entering in a field of speculation and guesswork. Well, counsel, you know, you've picked a lot of juries, haven't you? You've picked a lot of juries. In my time, yeah. And I've picked a few, too. And it's a crapshoot. You acknowledge that, don't you? There's no, this is not a scientific thing you're going by. You go by intuition. You go by inferences. There's nothing, this is an art picking a jury, not a science. You acknowledge that, don't you? Yes, Your Honor. All right. So you have a guy here who comes into the jury, and he's young. He's got a job, which is not a career path job. And prosecutor wants someone more embedded in the community and a little older with, who has more of a wide scope of human experience. Might not be the guy I would want. Might not be the guy you want. Or we would want him. But this is, you know, what, I'm not, why can you infer from that that he's striking the man because he's an African-American? Well, because the judge did not buy it. The judge bought the argument that he was young and he did not have a substantial job. And the judge bought it as a third step in the three-step analysis. In evaluating his credibility. So how are we on appeal to gainsay and say, oh, this is all hogwash. Prosecutor struck that man because he's black. Well, because in this particular case, the prosecutor did not specifically relate his age to the nature of the case. The prosecutor did not outline how his age affected his ability to fairly judge the facts of the case and to follow the trial court's instructions. All they did was speculate, well, he's young, he's going to tolerate whatever the defendant was charged with doing. But that's, as Collins Court stated definitively, expressly, you cannot strike a juror, a prospective juror, just because he's young without relating it to the facts of the case, especially when you have to evaluate his age. Well, the facts of the case are the defendant is young and you can't relate any other young people who are not black that he let on the jury. Well, we don't know because we don't have a list of the people who are. I'm talking about the record before us. I don't know. You don't know. If you knew, you would show it. You would show it to us. If you had a young white juror, you would, that would be your first comparison here for us. But the record before us does not show that the prosecutor struck any similarly situated nonblack. What I was able to glean from the record was that one particular juror was married but had no children. It may indicate that possibly he or she was young. Another juror. You're referring, she's young because she was married? I'm just saying possibly. Well, I don't deal in possibilities. I don't know about you. She was married but no children. I'm saying that's. I know some people married without any kids are very happy to be married 50 years, you know. That's correct. And another juror, number 9785, was single and no children. So we. And then. So we don't really know. We can't really make a really great comparison between the background of these various individuals. We don't know what they look like. But if when the prosecutor said he's striking him because he's young. If there was a young face on that jury, a young smiling face on that jury at that time, as a defense attorney, you would have been on your feet like lightning and saying he's striking this guy because he's young. How about the other guy? He's a Boy Scout himself. The defense lawyer did not make that particular. Well, can we infer from that that there were no other young people on the jury? Yes, you could infer it, but I would rather not. Now, I gather you were not the trial lawyer. Excuse me? I gather you were not the trial lawyer. No, Your Honor. Let me ask a question, but it's right along the same line with Judge Cowen's questions. And that is, there's some talk here about 400 pages of something that you don't have access to. What do you think's in those pages and why do you think that that is there? Well, what I was referring to was that a complete record of the voir dire in this particular case. Counsel for the government filed in her excerpts a transcript of the voir dire, but this was not before given to my client when he acted on his own behalf, pro se at the district court. And so it would have been convenient if he could have had a lawyer at the district court. Then he could have conveyed to the counsel just what the people look like, whether they're young or old, black or white, et cetera. I see. So your argument is we have now whatever you think that should have been had, but your argument is it should have been available in the district court. That's one argument. But still, I don't know exactly the nature, the details, more details of the people who were on the- Have you asked for the record? Excuse me, Your Honor? You asked for this record that you're talking about? I've mentioned it wasn't. The record was before it was lodged in the district court, the federal district, U.S. district court, and then it was returned to the court, to the state court. But counsel, in her excerpts, sort of was kind enough to supply a transcript of the voir dire. But as Your Honor stated before, we don't have a complete list of the background of these people. You have the full transcript of the voir dire? Yes. It's not before the court, though. It wasn't before the district court. Rather, it was before the district court, but not officially. In other words, they returned it. My client did not have access to it. So your client never had access to that in the district court? That's my conclusion. Well, if it's lodged, then it's not filed. It's just lodged. Yes. I mean, they looked at it, and the lawyer who represented the government had it available. The magistrate who reviewed the case had it available, and then they returned it. And I don't know, I don't think my client had access to this. Why don't we hear from the government and see what they have to say. May it please the Court. Deputy Attorney General Catherine Ocaba-Cohen for respondent. Speak up a little bit.  That's all right. I'll address that first issue as to what was before the district court. I can represent to the court that our office's practice is to obtain the file that our office created on direct appeal. That file is put into archives when the direct appeal is completed. When a habeas petition is filed, we obtain from our archives that direct appeal file, which normally contains the transcripts, the records that include the transcripts from the trial. And then when we file a return, a document on the merits of the petition, we lodge the record, the clerk's transcript and the reporter's transcript with the district court. It is therefore before the district court when the district court, when the magistrate judge issues his R&R. How about the petitioner? I do not know if a copy is sent to the petitioner. However, the petitioner is served with copies of all the documents that we file. And obviously the petitioner is the only person in these habeas proceedings who was there when the record was created. And was the petitioner pro se in the district court? I believe so, Your Honor. So not the first representation he's had in federal court on this issue? That is correct, Your Honor. So, and you're not sure whether he saw that transcript in the district court? I do not know, Your Honor. Well, was there an actual, there was a hearing, right? There was no hearing in the district court. There was no hearing, yeah. So he wasn't there. No, Your Honor. And counsel probably. And he's still incarcerated? Yes, Your Honor. It's a third strike for him, right? Yes, I have no reason to believe that he is not incarcerated based on his sentence. So it was all done on the papers, and part of it was this record, which the petitioner never saw? It's possible the petitioner never saw, never actually saw on habeas the voir dire transcript. You never sent it to him, right? No, Your Honor. However, this Batson claim was raised on direct appeal. It was also raised in the petition for review to the California Supreme Court. It was never brought in any of his state habeas petitions, and the next time he came up with it, he brought it to any court that was in the federal petition. So he was obviously aware of the Batson claim for quite some time. If he had wanted to obtain the records, he could have asked his appellate counsel for it. He obviously knows the facts of the Batson claim since he was there in person. He should have copies of everything that was filed in the court of appeal. Should have, maybe, but it wasn't represented. It was represented on direct appeal. It was not represented in the district court. No, Your Honor. He has no right to representation in the district court, and unless a petitioner retains counsel, it is my understanding that counsel is not appointed for him unless he presents a very good reason for it. Well, the court from time to time appoints counsel to represent petitioners, but it's done pro bono. I understand, Your Honor. Okay. Well, now, based on passing that, it's not necessarily irrelevant, but passing that for the moment, the recently decided Collins case is pretty close to this one. One way of reading the Collins case is to say that where you have a potential juror who is both the same age as and the same race as the defendant, that we're going to look very skeptically upon a claim as the basis for the peremptory challenge that because the prospective juror and the defendant are both young, there's going to be some identification. Why is this case not covered within the rationale, that rationale of Collins? Okay. I would submit that Collins is distinguishable for several reasons. Okay. But before I get there, could I just point out before I forget that Collins is not final. A petition for rehearing has been filed in that case. Okay. You know, that's worth pointing out. Okay. Okay. But I am interested in any distinctions that you see between this case and Collins. For my reading of Collins, first of all, I don't believe that it was ever established that the petitioner was close, was similar in age to the prospective juror who was dismissed. In fact, the Collins court keeps pointing out that the big problem with the prosecutor's exercise of the peremptory challenge against the juror is that she didn't relate it to the case. And in this case, the prosecutor actually did relate the reason for dismissing the juror because of his age. And that reason, as the court has discussed, is that the petitioner and that juror were very close in age. Does that make this case better or worse? That is to say, the whole reason for Batson is that you don't want one side or the other to be dismissing people who would have some close identification with the litigant based upon racial identification or gender identification or religious identification. And here, the very reason given is identification, but they're saying, but it's because of age. Well, but those slide back and forth pretty fast. So in a way, I'm not sure whether that cuts in your favor or against you because what you put right out here is the conclusion of identification. They just say age instead of race. First of all, the United States Supreme Court has never held that age is a protected class. Of course it's not. No, I understand that. It is not. Age is not a protected class. That's correct. It is, in fact, a legitimate reason for excusing a juror. And the Collins majority recognized that when it cited United States v. Pichet and United States v. Batson. No, no, I agree with you on that point. So for those reasons alone, I would submit that the prosecutor's justification of age was legitimate. There's no indication, unlike in Collins, that the prosecutor's reasons were protectual. In Collins, the majority found that the prosecutor was not credible because her reasons were contradictory to the record and not related to the case. However, here, all the prosecutor's reasons are supported by the record, and they do relate to this case. In addition to the fact that she said he would be – she was concerned that the juror would relate to the petitioner because of his age, she also found that the jurors – she also – the trial court found that the prosecutor's reasons were supported by its own observations of the various jurors' demeanors. And specifically, as to Juror 8692, whom the prosecutor found to be hostile, the trial court did say the juror did exude an attitude. And the prosecutor's reasons for excusing three of the five African American jurors have not been challenged beyond the trial court level. At trial, defense counsel abandoned challenges to one of those three jurors. And on appeal, the petitioner abandoned challenges to two of those three jurors, so that out of the five African American jurors whom the prosecutor challenged, only two are being – only two of those – Were there any African American jurors who were not challenged? Your Honor, that is not in the record. Would it be in the record if we sent it back? I have no idea what records survive in the Superior Court. Moreover, I would submit that a comparative analysis in this case not only cannot be done on the existing record – Even if it could be done, it's irrelevant, isn't it? It is irrelevant because the United States Supreme Court has said that – has not said that comparative analysis is required. And therefore, any application of comparative analysis to this case would violate Teague v. Lane. Well, I'm not sure I'm after a comparative analysis that is forbidden. I asked a somewhat different question. I just asked, were there any African American jurors who were not challenged? That information is not in the record. Were there any African American jurors seated? That information is also not in the record. The only information that's in the record about the jurors raised is regarding the eight prospective jurors whom the prosecutor challenged, three of whom were white and five of whom were African American. Three of whom – three of the African American jurors, she had clearly legitimate reasons. One was not satisfied with how the police handled a burglary at her house. One had been in a hung jury in a criminal case. And the third had exuded what the prosecutor described as a hostile attitude. Now, would there be something – and I realize this is outside the record, but it's more like what could be put into the record. That's the question I'm asking, not what is in the record, but what sorts of documents might be available. If we were to send this back to the district judge, and if there were a lawyer appointed for the habeas petitioner here, and if that lawyer did a sort of normal lawyerly job and scoured the records of the state court system, both at the trial court level and at the appeals court level, would some of this information likely be available, that is to say the race of the actual jurors and so on? Your Honor, I am not a trial attorney. I never practiced a law at the trial level on a regular basis in a superior court, so I really don't know what records they keep. I would submit that this court cannot order an evidentiary hearing because the petitioner never requested one in state court. And under Ortiz-Sandoval v. Clark in this circuit, the court cannot order an evidentiary hearing on the issue. As to whether or not it could be one in state court. The district court cannot order an evidentiary hearing? The United States Supreme Court has held that unless the petitioner seeks to develop a diligent record in the state court, an evidentiary hearing cannot be ordered on habeas. And in this case, petitioner never brought this claim in any of the state habeas proceedings, much less asked for an evidentiary hearing on this issue. The only time this issue was raised in state court was on direct appeal. And as we argued in our, I believe it was our return or supplemental return, by bringing up an issue that was only raised on direct appeal, petitioner has essentially conceded that the issue can be decided on the appellate record. And that is what we presented to the district court when we lodged the reporter's transcript and proof transcript and also when the documents filed as exhibits in our return and supplemental. Okay. Although my question is a little different from ordering a hearing in the district court if we were to remand, but rather what happens if we send it back to the district court with an appointed attorney in the district court? What can that district court find in the existing record in the state court? And your answer to that is you're not sure. I don't know what the district court can find. However, I would submit that anything that an attorney appointed on federal habeas would find would render the issue unexhausted because then these would be new facts that were never presented to any state court. That's a different question as to how much you need to present for there to be exhaustion. You're not confined purely to the questions that were argued in all the factual detail. All you need do is alert the state court to the nature of the claim. So that exhaustion, I can't decide that here. Maybe the district court on remand could. That happened here because the state court addressed the Wheeler issue. Well, I would submit, then, that any new evidence presented in the district court But do we know how many peremptory challenges the prosecution exercised here? Yes, she exercised eight. Three of them were against white jurors and five were against African-American jurors. She exercised eight. Let's see. And then she exercised no more than that. No, she did not. She exercised eight. And you lodged in the district court here the voir dire, but you didn't. I assume there's a transcript of the trial. You did not lodge that. No. There's a lot of stuff that is in the record that didn't show up in the district court. And what that precisely is going to be, we can kind of guess, but we don't know for sure. I have the entire file that was created by our office on direct appeal. I can represent to the court that it contains the normal documents, the court's transcript, the reporter's transcript. It doesn't contain any other transcripts. I don't believe that there's any reason to speculate that there's additional transcripts about jury selection that were not contained, that were considered anywhere or that were preserved. Well, what about information on the jurors? I mean, do they – it's hard. I'm trying to remember. But when they go to trial, when they go to trial, do they get a basic information on the jurors, where they live, where they work, stuff like that? Your Honor, I don't know. There is one point in the transcript where they excuse a juror for cause, and the attorneys approach the bench and the trial court says the juror's name is on page such and such, first section, fourth name, something like that, which indicates that both attorneys and the trial court had documents which listed at the very least the jurors' names. It also likely listed the amount of time that they would be available to serve as a juror. I don't know what additional information it contained, and I represent that just based on my own jury experience as to the amount of time that the juror would be available to serve. And I just don't know what additional information was on those – was in that form. Is there a service? We probably wouldn't know this either. But is there a service? I know there is a big one on the civil side. Is there a service on the criminal side that makes available to counsel background information on each juror and how they voted in other criminal cases and all that? I believe it's – I'm not exactly sure what Your Honor is asking, but let me try to answer what I think you're asking, which is that I think the only information that the attorneys have on the jurors is pretty much what they get in court, their names, the amount of time they're available to serve on a jury, and the information that the juror provides during voir dire. Jurors are asked what their prior jury experience is. If they have served on a prior criminal case, they're specifically told to discuss – to tell the court whether or not a verdict was reached, but not to tell the court how – what the verdict reached was. And I interpret that to also include how they voted. And I've never – I've never seen a transcript where anyone has ever asked how did you vote. In fact, in fact – How did you vote? But where did they get the information about the person who served on a hung jury? Oh, that was just – that's one of the questions that's asked during voir dire is – Voir dire. Have you – it's one of the questions posed by the trial court. And I also wanted to point out that although counsel suggests that the prosecutor could have asked juror 6618 what – you know, do you get paid, it appears from the transcript that the trial court and the attorneys had previously decided that the trial court would be the one asking the question. The trial court never afforded the attorney – never says to the attorneys in open court, at least, do you have any questions. There's never at any point – there's never any point during the voir dire when the trial court turns to the prosecutors and asks do you have any questions. And there's never any question posed by either of the attorneys during voir dire. So I would submit that there was no such opportunity afforded to the prosecutor. And in any event, the trial court found that – The trial judge did all the – asked all the voir dire questions. Yes, Your Honor. I would also submit, just going back to Judge Fletcher's question, about what could be discovered on – in further investigation, that any information found, since it would not have formed the basis of the California Court of Appeals opinion, cannot really go – cannot really enter into the analysis of whether or not the Court of Appeals decision was reasonable. And that would be from the very recent United States Supreme Court case. I'm sorry, the slide escapes me right now. But it is a Sixth – it was out of the Sixth Circuit, dealing with a murder in Ohio. Unless the Court has any further questions, I would submit. I mean, as to each of these two jurors that we're dealing with now, did the trial court make specific or set forth specific reasons why the jurors should not – what specific reasons to support the exercise of the peremptory challenge? Did the trial court – the prosecution? The judge. I mean, does the judge have an obligation to make a record on each of the – we're only going to talk about the two. Yes. Does he have an obligation to make a record, make his findings as to each of them? Under Batson, the only requirement of the trial judge is that he assess the credibility of the prosecutor's reasons and determine whether or not – once the trial court determines whether those reasons are race-neutral, the trial court then has the duty to determine whether they are pretextual. I don't believe Batson requires any sort of specific record be made as to the trial court's own assessments as to each juror, just whether or not the prosecutor finds the prosecutor's reasons to be pretextual or not. And in this case, the trial court did find that the prosecutor's reasons were not pretextual, and those reasons are supported by the record. Thank you. Well, you know, as to juror number 1690. That's the gentleman who was a retired maintenance worker. We don't actually know his age, do we? We do not know his exact age, Your Honor. The prosecutor stated that she believed the juror was shaking. The defense counsel disputed that. The trial court, however, stated that it understood what the prosecutor was saying and that there would be some, quote, validity for the prosecutors excusing him because of his age and his potential inability to pay attention. Well, and didn't the trial judge say that he didn't think that this gentleman showed that he was incompetent by any means? The trial court stated he didn't think the juror was incompetent. The trial court found the juror to be competent. The trial court further stated, however, that the prosecutor's reasons were supported. And didn't the prosecutor allow two other retirees, jurors number 4443 and 7684? Those two were retirees, and each of them had two adult children, and they remained on the jury. Your Honor, my father's retired, and I don't consider him elderly, and I'm grown. You know, comparative analysis in this case would be extremely difficult because the record is not developed, and it would not be that low. But wasn't the prosecutor allowed two other retirees? Retirees. He said he was retired. Your Honor, he said he was retired. We don't know what he looked like, how he moved. You know, the prosecutor had the opportunity to see all of these things. No one else came up with the view that this gentleman was shaky or was having any physical problems. And if he had physical problems, he had an opportunity early on to be excused. The judge asked, is anyone here for any reason can't serve on this jury? And several people said, yeah, they had a problem. The judge let them go. The trial court agreed with the prosecutor that the juror's age was a factor in his ability to serve as a juror and found that there was validity for the prosecutor's reasons. If this court were to find that, every juror who stated he could be fair and impartial and capable of serving on a jury. We know all that, you know, and usually that's sufficient to overcome a challenge for cause. Yes. Yeah, okay. But if this court were to find that once a juror was able to serve and could not be dismissed for cause, that any reason given by the prosecutor was pretextual, it would render the parametric challenge meaningless. The prosecutor's challenges are based on professional judgment and educated hunches, and that was the basis for the prosecutor's challenges. But we do recognize comparative analysis in the Ninth Circuit. I understand, Your Honor. It is recognized in the Ninth Circuit. However, the California courts did not engage in it. Yeah, but you're in the Ninth Circuit now and we're dealing with the Federal Constitution. I understand, Your Honor, but application of that case, I would submit, would violate Teague v. Lane in this specific case because it was never done at the state court. Now, is this an AEDPA case or a Teague v. Lane case? No, it is definitely subject to the ADPA. Oh, well, you don't need Teague v. Lane. You've got better grounds under AEDPA. I would ask the Court to consider the United States Supreme Court decisions in Earley v. Packer, Woodford v. Visciati, and Lockyer v. Andrade, and to note the strong dissent in Collins, which did chide the majority for not according proper deference to the California Court of Appeal. No, I just have trouble following you. You're talking fast and your voice is low. I apologize, Your Honor. I would ask the Court to note the majority of the dissent in Collins v. Rice, which did chide the majority for not according deference to the California Court of Appeal. Neither the defense attorney or the judge did not disagree with the prosecutor that the gentleman was elderly and shaking. That is correct, Your Honor. And the defense attorney did. And defense attorney did not object to the statement that he was elderly and shaking. Is that correct? The defense counsel stated he did not see the judge shaking. He did not dispute the fact that he was elderly. Okay. And he didn't point out that there were other people on the jury equally as elderly, whatever that means, who the prosecutor allowed to stay on the jury who were not black. That is correct, Your Honor. All right. Well, did the judge make a finding that this gentleman was elderly? The trial court's statement was that age was a factor in the juror's ability to serve as a juror. Well, how old was this juror? That specific age of the juror is not contained in the record, Your Honor. It's not in that little sheet that they pass out that has some basic information on each juror? I don't know what's on that sheet, Your Honor. And that sheet is not part of the record on appeal and therefore would not have been considered by the California Court of Appeal in its decision. Could you do you know the name of that case? I learned a little law from you that we can't order an evidentiary hearing unless it was requested on direct appeal. It actually has to be requested just in the State court. And the case is Ortiz-Sandoval. I'm sorry. Ortiz. Hyphen-Sandoval. Yeah. B. Clark with an E. Uh-huh. And the citation is 323F3rd at 1171 footnote 4. Thank you. Now, would you write that down on one of our gum sheets? Yes, Your Honor. It's also cited in the Respondent's brief, in the answering brief at page 27 at the very end. All right. But why don't you just write it down anyway? Okay. All right. If not, the Court has any questions. Thank you. Anything else you want to say? Just a couple. I wanted to point out that, as the Court is probably well aware, under the habeas corpus rules, the district court and magistrate have the authority to expand the record. That is, and also we could reconstruct the record at what occurred at the trial court with respect to the voir dire. So I think that would be a proper disposition of this case, because then the district court lawyer, who represents the defendant in this case or the petitioner, could consult with his client and the defense lawyer in the original trial, and they would be able to determine the composition of the theories. In other words, in order to determine if there was a comparative analysis in this case. And just one last thing, as far as the evidentiary hearing is concerned, as I believe stated in my brief, that the Court has the authority to order an evidentiary hearing where the failure to ask for it was not due to the fault of the petitioner. In this case, it wasn't, because it was the government that had the power to augment the record and didn't. In other words, they could have made it a part of the record on appeal. I don't follow that. I'm sorry. That went over my head. Yeah. Well, generally, in which case are you talking about, the State matter or the Federal matter? Well, we were talking about whether counsel mentioned that an evidentiary hearing wasn't asked for. That's in the State court, the district court. After the petitioner in this case filed his pro se motion. No, she said in the State court that they did not ask for an evidentiary hearing. And that's why it's barred in the Federal court under this case that she cited. If I understood her correctly. Well, that's her interpretation. I'd have to review the case. I never heard of that before. So it's fascinating about this job. You learn new things every day. Even when you're elderly. Thank you. We'll call number six. United States versus Harley Roberson and Travers Ramirez. What? What happened? Okay.
judges: Pregerson, Cowen, W. Fletcher